1
2
3
4
5
6                   UNITED STATES DISTRICT COURT
7                   EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 16, 2018

SEAN F. McAVOY, CLERK

8

9   JEREMY T.,                              No. 4:17-CV-05145-JTR

10              Plaintiff,
                                            ORDER GRANTING PLAINTIFF'S
11                                          MOTION FOR SUMMARY
         v.                                 JUDGMENT
12

13   COMMISSIONER OF SOCIAL
     SECURITY,
14

15              Defendant.

16

17          **BEFORE THE COURT** are cross-motions for summary judgment.  ECF

18   Nos. 14, 18.  Attorney D. James Tree represents Jeremy T. (Plaintiff); Special

19   Assistant United States Attorney Thomas M. Elsberry represents the

20   Commissioner of Social Security (Defendant).  The parties have consented to

21   proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative

22   record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's

23   Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary

24   Judgment; and **REMANDS** the matter to the Commissioner for additional

25   proceedings pursuant to 42 U.S.C. §§ 405(g), 1383(c).

26                              **JURISDICTION**

27          Plaintiff protectively filed an application for Supplemental Security Income

28   (SSI) on July 5, 2013, Tr. 180, alleging disability since April 1, 2011, Tr. 167, due

to depression, bent fingers, hand pain, and arm pain.  Tr. 185.  The application was denied initially and upon reconsideration.  Tr. 112-20, 124-29.   Administrative Law Judge (ALJ) Timothy Mangrum held a hearing on February 24, 2016 and heard testimony from Plaintiff and vocational expert, Daniel R. McKinney.  Tr. 37-62.  At this hearing, Plaintiff amended his onset date to July 5, 2013 to correspond with the date of his SSI application.  Tr. 39-40.  The ALJ issued an unfavorable decision on May 3, 2016.  Tr. 20-31.  The Appeals Council denied review on July 14, 2017.  Tr. 1-6.  The ALJ's May 3, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Plaintiff filed this action for judicial review on September 15, 2017.  ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 32 years old at the date of application.  Tr. 167.  He completed high school in 2000.  Tr. 186.  His reported work history includes the jobs of laborer and cage cleaner.  Tr. 186.  Plaintiff reported that he stopped working on September 1, 2006 due to his conditions.  Tr. 185.

Plaintiff had prior applications for SSI and Disability Insurance Benefits.  Tr. 180-81.  His most recent denial was in an SSI claim on March 4, 2011 following a hearing before an administrative law judge.  Tr. 66-83.  In the March 4, 2011 decision, the prior ALJ found that Plaintiff retained the residual functional capacity to perform his past work as a custodian, and, in the alternative, found him ineligible at step five.  *Id*.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the

national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 3, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. In doing so, he found that res judicata and the presumption of continuing non-disability had not been overcome and adopted all of the prior ALJ's findings. Tr. 20.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 5, 2013, the date of application. Tr. 23.

At step two, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder; dysthymia; anxiety; and congenital deformities of the first and second fingers in both hands. Tr. 23.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 23.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform light work with the following limitations: "He can frequently finger, handle and feel. He can perform simple, routine tasks that do not involve more than superficial contact with the general public." Tr. 25. The ALJ concluded that Plaintiff was able to perform his past relevant work as a custodian. Tr. 30.

In the alternative to a step four determination of ineligibility, he made an alternative determination at step five that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of escort vehicle driver and surveillance systems monitor. Tr. 31. The ALJ concluded Plaintiff was

not under a disability within the meaning of the Social Security Act at any time from July 5, 2013, through the date of the ALJ's decision.  Tr. 31.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) applying the doctrine of res judicata, (2) failing to properly weigh medical opinions, and (3) failing to properly address Plaintiff symptoms statements.

## DISCUSSION[1]

### 1.  Res Judicata

Plaintiff challenges the ALJ's finding that he failed to overcome the presumption of continuing non-disability following the prior ALJ decision, as established by the doctrine of res judicata.  ECF No. 14 at 7-13.  He argues that he has presented evidence of impairments not considered in the prior determination and evidence of a worsening of the impairments that were considered in the prior determination.  *Id*.

The principals of res judicata should not be rigidly applied in administrative proceedings.  *Lester v. Chater*, 82 F.3d 821, 827 (9th Cir. 1995) (*citing Gregory v. Bowen*, 844 F.2d, 664, 666 (9th Cir. 1988); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  The Commissioner can apply the doctrine to bar reconsideration

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause.  To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

of a period that has already been adjudicated, and it creates a presumption of non-disability going forward from the date of the Commissioner's final determination. *Id.* However, this presumption does not apply if there are "changed circumstances." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). "Changed circumstances" includes, among other possibilities, the existence of a new impairment, a worsening in conditions, or a change in the claimant's age category. *Lester*, 81 F.3d at 827.

First, Plaintiff alleges that he has overcome the presumption of continuing non-disability by presenting evidence of two new impairments: personality disorder and social communication disorder. ECF No. 14 at 8-9.

Plaintiff's personality disorder was originally diagnosed by Jan M. Kouzes, Ed.D., following an evaluation on January 20, 2012. Tr. 232. The ALJ failed to discuss Dr. Kouzes' evaluation, finding that it "predates the timeframe for consideration pursuant to 20 CFR 416.912(d)." Tr. 30 (*citing* Tr. 232-35). Earlier in his decision, the ALJ addressed the regulation, stating that "[p]usuant to 20 CFR 416.912(d) the evidence considered when only an application for SSI has been filed is that one year prior to the protective filing date through the date of decision. Here, the evidence considered is from July 5, 2012, through the date to this decision." Tr. 20. This is a misstatement of 20 CFR § 416.912(d), which at the time of the ALJ's decision stated the following:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

20 CFR § 416.912(d) (2016).[2]  Nothing in this provision supports the ALJ's assertion that his consideration of the evidence is limited to twelve months prior to the application date.  It only creates a duty on the part of the agency to develop the record one year prior to the application date before denying benefits.  The ALJ is required to consider "all of the evidence relevant to your claim, including medical opinions."  20 CFR § 416.920b; 416.927.

In this case, at application, Plaintiff alleged disability starting April 1, 2011. Tr. 167.  The Plaintiff's attorney amended the onset date at his hearing "to that protective filing date," of July 5, 2013.  Tr. 40.  There is no indication that this amendment of the onset date was a reflection of a change in medical severity or a discrete onset of an impairment.  *Id*.  It was simply to conform with procedural rules, limiting the award of SSI benefits to the first full month following application under 20 C.F.R. § 416.501 (i.e. Plaintiff would not have received benefits prior to August 2013 even if he proved a disability onset date prior to his July 5, 2013 application).  It is a questionable practice to amend an onset date for the sake of procedural ease when that amended date then substantively prejudices a claimant by reducing the evidence considered.  Therefore, the Court cautions the Commissioner against refusing to consider evidence prior the date of filing in SSI cases.  *See* POMS DI 25501.370 (requiring the adjudicator to consider the evidence prior to the filing date in cases where he cannot assess the medical severity of the impairment without such documentation).

A claimant does not file for benefits and then develop a severe medical impairment affecting his ability to work.  A claimant first develops a severe impairment that affects his ability to work, then he files for benefits.  Therefore, defining what evidence is to be considered based on the filing date alone leads to

---

[2]On March 27, 2017, the regulation was amended and this identical language was moved to 20 CFR § 416.912(b)(1).

unjust and unconscionable results.

The Court acknowledges that the Ninth Circuit has held that opinions that predate a claimant's date of onset are of limited relevance. *Carmickle*, 533 F.3d at 1165; *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). However, in *Carmickle*, the opinion concerned was penned by a provider prior to a workplace injury that was the cause of the severe impairments. 533 F.3d at 1165. This result is logical. There is no point in giving credence to an opinion that was penned prior to an injury establishing an impairment and while the claimant was still working.

In *Fair*, the opinions that were rejected were penned in the pursuit of a prior disability claim that had already been denied and res judicata precluded the reopening of that time period. 855 F.2d at 600. The ALJ in *Fair* found the opinions were only relevant in considering whether or not the claimant's impairments had worsened in the new application. *Id*.

These two cases differ from the case at hand. First Plaintiff was not working at the time of this opinion. Plaintiff is not claiming an onset date based on an injury with a discrete date of occurrence, but instead has an original alleged onset date correlating with the denial of a prior claim and an amended onset date correlating with his date of application. Second, the opinion in question is not discussing Plaintiff's functional abilities during the time period of the prior claim, but is instead discussing Plaintiff's limitations during the period between the denial of the prior claim and before application in the current claim.

Here, the ALJ erred by misstating the federal regulation and inaccurately limiting the scope of evidence he considered. In doing so, the ALJ failed to consider the diagnosis of Personality Disorder when addressing the presumption of non-disability and he failed to address the impairment throughout the five step sequential evaluation. This case is remanded for the ALJ to properly consider the evaluation of Dr. Kouzes in both the res judicata determination and throughout the five-step sequential evaluation.

Plaintiff also argues that the ALJ failed to properly consider the diagnosis of social communication disorder as a new impairment when considering whether the presumption of continuing non-disability applied to the current application. ECF No. 14 at 8-9. In January of 2014, Thomas Genthe, Ph.D., completed a psychological evaluation and a corresponding report. Tr. 354-59. He diagnosed Plaintiff with other specified depressive disorder, mild and social communication disorder. Tr. 357. He assessed Plaintiff's ability to interact appropriately with the public as "fair to poor," his ability to get along with coworkers and/or peers as "fair," and his ability to respond appropriately to criticism as "fair." Tr. 358. The ALJ gave significant weight to the portion of Dr. Genthe's opinion that was consistent with the residual functional capacity determination made by the prior ALJ decision and adopted in the current ALJ decision. Tr. 27. However, the ALJ rejected the portion of the opinion that provided additional limitations in Plaintiff's social abilities, stating the following:

> Conversely, the portion of Dr. Genthe's opinion that the claimant, "is unlikely to function adequately in a work setting until his psychological impairments have been managed more effectively" is given little weight, because this is not supported by either his exam or the other evidence. As an example: while Dr. Genthe commented that the claimant has difficulty maintaining a dialogue partly because of a significant response latency (delay). He communicated effectively enough to complete the consultative exam. The claimant also interacts daily with others via social media, and occasionally does chores in public, such as shopping. For these reasons, it is found that the claimant can have at most superficial interaction with the general public.

Tr. 27-28.

Here, the ALJ's rejection of the opinion is not supported by substantial evidence and his rationale is legally insufficient. When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's

opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

Neither party identifies which standard is applicable to Dr. Genthe's opinion. ECF Nos. 14, 18, 19. However, the appropriate standard is immaterial because the ALJ's reasons for the rejection are either not supported by substantial evidence or fall short of the lessor standard of specific and legitimate. The ALJ found that Dr. Genthe's findings addressing Plaintiff's limitations in communication were contradicted by Plaintiff's ability to complete the evaluation, the ability to interact via social media, and the ability to shop in public. In the evaluation, Dr. Genthe noted that "when asked questions, he had significant problems coming up with answers and if he did, it was after a significant pause, frequently lasting a minute or longer." Tr. 358. Additionally, he noted that Plaintiff "was somewhat disorganized in his thoughts and demonstrated difficulties maintaining a dialogue, in part because of a significant response latency." Tr. 357. Similar observations have been made throughout the record. During a mental status exam in November of 2011, Elise Wigginton, M.A., observed that Plaintiff "spoke in a logical and sequential manner; however, client paused for excessive periods of time before answering questions and processing speed appeared quite slow." Tr. 230, 422. In April of 2012, Dr. Moon observed that Plaintiff "[t]ook a long time to respond to questions." Tr. 482. In May of 2012 during an assessment by Catholic Family and Child services, it was observed that Plaintiff "makes exceptionally long pauses after questions are asked,", and "[t]here were times

when he did not respond to the question at all." Tr. 247. Plaintiff's "processing speed appears slow as he often took long pauses before responding to therapist and occasionally did not respond at all or change the subject." Tr. 303. "When asked about his thoughts or feelings related to something else, client paused for great lengths of time and was unable to make eye contact." Tr. 344. Similar notations were made in May, July and August 2012 progress notes, "Jeremy makes exceptionally long pauses after questions are asked, and takes loud, deep breaths." Tr. 293, 295, 307. Likewise, in October of 2015, Dr. Moon observed Plaintiff's rate of speech was slow and that "he had long pauses before answering the interview questions." Tr. 473. Additionally, Dr. Moon stated that Plaintiff "was slow to respond to questions and often sighed during the interview." Tr. 469.

The ALJ's attempt to refute Plaintiff's slow communication, diagnosed by Dr. Genthe as social communication disorder, and the resulting difficulties in social functioning with the fact that Plaintiff was able to communicate during the evaluation, able to interact via social media, and shop in public, is simply not supported in logic and amounts to the ALJ substituting his opinion for that of the psychologist. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (the ALJ "must be careful not to succumb to the temptation to play doctor"). First, the mere fact that Plaintiff was able to communicate sufficiently to complete a psychological evaluation is not sufficient to negate the presence of an impairment and related limitations, which were observed during the evaluation itself. Second, communication via social media does not require verbal, in-time responses and has no bearing on the ability or inability to verbally communicate effectively. Third, the ALJ failed to state how the ability to shop in public negates a communication impairment and resulting limitations. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day").

The Court finds that the failure to consider the new impairments was an error that supports a remand for additional proceedings. Upon remand, the ALJ will also consider the new diagnosis of social communication disorder in the application of res judicata and in the sequential evaluation process.

Plaintiff also alleges that he overcame the presumption of continuing disability by showing a worsening of symptoms associated with the impairments considered in the prior ALJ determination. ECF No. 14 at 9-11. Here, the ALJ has failed to consider a substantial portion of the evidence due to his misapplication of 20 C.F.R. § 416.912. Tr. 30. Therefore, upon remand, the ALJ will consider the entire record in considering of whether Plaintiff has overcome the presumption of continuing non-disability and specifically consider whether the evidence demonstrates a worsening of the impairments addressed in the prior ALJ decision.

**2.    Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the opinions expressed by Ms. Wiggington, Dr. Pulido, Dr. Genthe, Dr. Moon, Dr. Lilagan, and Dr. Opara. ECF No. 14 at 19-21.

The ALJ failed to discuss Ms. Wiggington's November 2011 opinion, Tr. 228-31, and Dr. Pulido's March 2012 opinion, Tr. 236-37, 489-90, because both opinions were penned prior to a year before the filing date. Tr. 30. As discussed above in reference to Dr. Kouzes' opinion, this is legal error, and the ALJ is required to address these opinions upon remand.

The ALJ addressed the opinion Dr. Genthe, but, as discussed above, failed to provide a legally sufficient reason supported by substantial evidence to reject the portion of the opinion that he did. Therefore, upon remand, the ALJ will readdress Dr. Genthe's opinion.

The ALJ addressed the remaining providers' opinions in his decision. Tr. 28-30. However, since the case is being remanded for the ALJ to properly address the evidence in the file he erroneously excluded, the ALJ is instructed to readdress

all the medical source opinions in the context of the entire record upon remand.

**3. Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that his symptom statements were less than fully credible. ECF No. 14 at 13-18.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); s*ee also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ

would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to properly address all the evidence in the record, readdress the opinion evidence in the record, and make a new determination as to the reliability of Plaintiff's symptoms statements. The ALJ will supplement the record with any outstanding evidence and call a psychological expert and a vocational expert to testify at any remand proceedings.

### CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 16, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15